**IN THE COURT OF APPEALS OF IOWA**

No. 24-0799
Filed August 21, 2024

**IN THE INTEREST OF L.R.,**
**Minor Child,**

**A.L., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Greene County, Ashley Beisch, Judge.

　　A mother appeals the termination of her parental rights. **AFFIRMED.**

　　Leah Patton of Patton Legal Services, LLC, Ames, for appellant mother.

　　Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

　　Kaitlyn DiMaria of DiMaria Law, PLLC, Grimes, attorney and guardian ad litem for minor child.

　　Considered by Tabor, P.J., Chicchelly, J., and Danilson, S.J.*

　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**DANILSON, Senior Judge.**

A mother appeals the termination of her parental rights to her child, L.R., born in 2021.[1]  She argues the State failed to establish statutory grounds authorizing termination, contends termination is not in L.R.'s best interests, requests we apply a permissive exception to termination, argues the juvenile court should have established a guardianship in lieu of termination, and requests additional time to work toward reunification.  Following our review, we affirm.

## I.     *Background Facts & Prior Proceedings[2]*

This family came to the attention of the Iowa Department of Health and Human Services in April 2022, when the child was about eight months old, following reports that the mother was attempting to care for the child while under the influence of methamphetamine.  At that time, the parents agreed to a safety plan placing L.R. with the maternal great grandparents.  Less than a month later, the mother tried to assume care of the child while exhibiting behaviors consistent with methamphetamine use.

In July, the juvenile court adjudicated L.R. as a child in need of assistance (CINA).  The CINA order formally placed legal custody of L.R. with the department for physical placement with a relative or foster family.  The same month, the mother also self-reported marijuana and methamphetamine use.

In January 2023, the mother tested positive for methamphetamine.  The following February the mother completed a substance-abuse evaluation.  That

---

[1] The juvenile court also terminated the parental rights of the father, and he does not appeal.

[2] As only the mother appeals the termination of her parental rights, our factual recitation focuses on her conduct.

evaluation recommended she complete extended outpatient treatment, but she only attended a few times. In March, she was arrested for possession of marijuana and drug paraphernalia. The mother admitted to using methamphetamine in April. She was arrested again in September, that time for possession of marijuana, drug paraphernalia, and methamphetamine.

Despite the mother's lack of progress, in October the juvenile court granted her six more months to work toward reunification.

In November, L.R. was placed in the care of another relative; visits have been supervised by Boys Town since that time. Boys Town offered the mother nineteen visits with L.R., but she only attended seven of those.

The mother tested positive for methamphetamine again in February 2024. She was set to restart outpatient treatment, but she did not show up. About a week later the mother attended an initial appointment with the treatment center, but she did not follow through with the treatment program.

The case progressed towards termination, and the juvenile court held a termination hearing in April. Both the case manager and the mother testified at the hearing. The mother sought either the return of L.R. to her custody or additional time to work toward reunification. However, the juvenile court ultimately determined that the State established statutory grounds for termination and termination is in L.R.'s best interests; it did not apply a permissive exception to preclude termination. The mother filed an Iowa Rule of Civil Procedure 1.904 motion asking the court to reconsider its ruling and requested the court establish a guardianship in lieu of termination. The juvenile court denied the motion, and the mother appeals.

## II.     Scope & Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022).  Our paramount concern in termination proceedings is the best interests of the children.  *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).  Typically, our review follows a three-step process that involves determining if a statutory ground for termination is satisfied, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination.  *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).  Then we consider additional claims raised by the parent.  *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

## III.     Discussion

### A. Statutory grounds

With respect to the statutory grounds authorizing termination, the juvenile court terminated the mother's rights pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2023).  As the mother's rights were terminated on multiple grounds, we affirm if any one of the grounds is supported by the record.  *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record.").  We focus our attention on paragraph (h), which permits termination upon clear and convincing proof that (1) "the child is three years of age or younger"; (2) "the child has been adjudicated a child in need of assistance"; (3) "the child has been removed from the physical custody of the child's parents for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty

days"; and (4) the child cannot be safely returned to the custody of the parent. Iowa Code § 232.116(1)(h). The mother limits her challenge to the third and fourth elements.

As to the third element relating to the period of removal, the mother argues the child was never formally removed from her custody and was instead "safety-planned out of her care for the entire case." She notes "the juvenile court did not hold a hearing on removal and did not enter a formal removal order." However, the order adjudicating L.R. CINA in July 2022 removed L.R. from the parents' custody, stating "the temporary custody of the child in interest is placed with the Iowa Department of Human Services for placement with a relative or foster family." In other words, the adjudicatory order removed L.R. from the parents' custody and placed him in the department's custody. So there was a formal removal of the L.R. from the mother's custody. And the mother points to no authority that requires the juvenile court to issue a separate removal order.[3] We conclude L.R. had been formally removed from the mother's custody for the required period of time, satisfying the removal element.

Moving on to the fourth element, the mother argues that L.R. could have been returned to her custody at the time of the termination hearing. We disagree. The mother has not established any meaningful period of sobriety, and she tested positive for methamphetamine within two months of the termination hearing. Given the mother's failure to follow through with treatment in the past and her recent use,

---

[3] We recognize the juvenile court may issue both a removal order and a separate CINA adjudicatory order. But nothing prevents the juvenile court from issuing one order that both adjudicates the child as a CINA and formally removes the child from the parents' custody.

we believe it is likely that she will continue to use methamphetamine.  *See In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020).  Aside from the mother's use of illegal substances, we recognize the mother is not equipped to assume care of a young child.  She currently lacks stable housing.  She testified that she is staying with a friend in a small apartment, but she conceded that friend has a criminal history and has kicked her out of the apartment in the past—leaving her nowhere to go.  And the mother lacks a basic understanding of how to care for such a young child.  When asked to describe the day-to-day tasks of caring for the child, the mother could not.

Simply put, the mother is not equipped to provide safe care for L.R. at this time.  The State established grounds for termination under section 232.116(1)(h).

### B.      Best Interests

Termination also must serve the child's best interests.  *See* Iowa Code § 232.116(2).  When considering the child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)).

The mother argues termination is not in L.R.'s best interests, noting she has never physically abused him.  While we agree the record is devoid of any suggestion that the mother ever physically abused the child, physical abuse is not a prerequisite to a determination that termination is in a child's best interests.  Here, for example, even absent any physical abuse, we conclude termination is in L.R.'s best interests.  This mother cannot provide L.R. with a basic level of stability and

care. She lacks any insight on how to care for the child. Conversely, L.R.'s caretakers are currently meeting his needs, including getting him treatment with a speech therapist for a speech delay. The caretakers are interested in adopting him. Adoption would provide L.R. with permanency, and termination is a necessary step before any adoption can occur. Accordingly, we conclude termination is in L.R.'s best interests.

### C. Permissive Exceptions

Once the State has proved grounds for termination, the burden shifts to the parent to prove a permissive exception under section 232.116(3). *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). The mother attempts to invoke two permissible exceptions to termination. The first, section 232.116(3)(a), is applicable when "a relative has legal custody of the child." However, this exception is not applicable in this instance because, although L.R. was placed with the maternal great aunt and uncle, the department had legal custody of L.R. who was only placed in a familial home.[4]  *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014); *In re K.B.*, No. 23-0792, 2023 WL 5092856, at *4 (Iowa Ct. App. Aug. 9, 2023).

The second permissive exception the mother contends should preclude termination is section 232.116(3)(c), which is applicable when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the

---

[4] A May 2023 Dispositional Review Order stated, "Custody of the child in interest shall remain with the Iowa Department of Health & Human Services for placement with an appropriate relative." The October 2023 Permanency Order stated that the order "previously entered continues to be in the best interest of the child and should be ratified and confirmed." As we find nothing in the record noting a change in legal custody of the child between entry of these orders and the termination hearing, we find that legal custody of L.R. remained with the department at the time of the termination hearing.

time due to the closeness of the parent-child relationship." The mother purports to share a strong bond with L.R. We have no doubt that there is a bond between parent and child, but we credit the caseworker's testimony wherein she opined that termination would not take an emotional toll on L.R. She explained that L.R. "doesn't really engage" during visits with the mother and "doesn't want to get out of the van" to attend visits. So while the mother feels a strong bond to L.R., we question if L.R. reciprocates a bond of equal magnitude. Ultimately we decline to apply this permissive exception.

### D. Guardianship

The mother also advocates for the establishment of a guardianship as an alternative to termination. *See* Iowa Code §§ 232.104(2)(d)(2), .117(5). We do not agree for multiple reasons. First, the mother first proposed the establishment of a guardianship in her rule 1.904 motion. Even if we concluded the issue was properly preserved for our review, this case is not well-suited for a guardianship. We recognize that "a guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). L.R.'s young age also weighs against the establishment of a guardianship. *See A.S.*, 906 N.W.2d at 477. And it is not clear from the record who would be willing to assume the role of guardian if a guardianship were established. *See In re M.H.*, No. 24-0576, 2024 WL 3050791, at *3 (Iowa Ct. App. June 19, 2024) ("Without a named option and evidence supporting the choice of a particular person, we cannot review the factors that are usually considered when determining whether a guardianship is appropriate in this case."). Accordingly, we cannot conclude that a guardianship would be in L.R.'s best interests.

### E.     Additional Time

Finally, we address the mother's contention that she should be given more time to work towards reunification. The court may grant a parent six additional months to work toward reunification in lieu of termination under certain circumstances. *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving an additional six months to work toward reunification). Notwithstanding, before the court may grant a parent such additional time, it must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

Here the juvenile court previously granted the mother additional time to work towards reunification. However, the mother made no meaningful progress during that period of time. Instead, her progress remained stagnated. We understand the mother has taken the beginning steps towards restarting outpatient treatment. We commend her for taking that important step. At the same time, we must face the fact that she failed to fully engage and participate in that treatment following her initial meeting. Unfortunately, given the mother's poor track record over the last two years, we do not believe she is likely to be in the position to assume the role of parent within six months. Accordingly, we have no basis to grant the mother additional time to work towards reunification.

*IV.*     ***Conclusion***

The State established statutory grounds authorizing termination of the mother's parental rights. Termination is in the child's best interests. We decline to apply any permissive exceptions to termination or to establish a guardianship in lieu of termination. Finally, we do not grant the mother any additional time to work towards reunification.

**AFFIRMED.**